| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Shannon Doyle, Esq. (SBN 207291)<br>David Coats, Esq. (SBN 295684)<br>GHIDOTTI \| BERGER LLP<br>1920 Old Tustin Ave.<br>Santa Ana, CA 92705<br>Ph: (949) 427-2010<br>Fax: (949) 427-2732<br>bknotifications@ghidottiberger.com | |

☐ *Movant appearing without an attorney*
☒ *Attorney for Movant*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION

| In re:<br> Richard Parnell, | CASE NO.: 6:19-bk-14348-SY |
|---|---|
| | CHAPTER: 13 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations)**<br>**(REAL PROPERTY)** |
| | DATE: 05/15/2024<br>TIME: 9:30 am<br>COURTROOM: 302 |
| Debtor(s). | |

**Movant:** US Bank National Association, as Trustee of The Cabana Series III Trust

1. **Hearing Location**:
   - ☐ 255 East Temple Street, Los Angeles, CA 90012
   - ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
   - ☒ 3420 Twelfth Street, Riverside, CA 92501
   - ☐ 411 West Fourth Street, Santa Ana, CA 92701
   - ☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 04/18/2024

Ghidotti | Berger
_____
Printed name of law firm (if applicable)

Shannon Doyle, Esq. (SBN 207291)
_____
Printed name of individual Movant or attorney for Movant

/s/ Shannon Doyle
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 521 East Montrose Street
   *Unit/suite number*:
   *City, state, zip code*: Rialto, CA 92376

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit  1    ):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☐ 11  ☐ 12  ☒ 13
   was filed on (*date*)  05/20/2019   .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☒ A plan, if any, was confirmed on (*date*) 08/29/2019   .

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☐ Movant's interest in the Property is not adequately protected.

       (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

       (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

       (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

       (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

       (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

       (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

       (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

       (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

       (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                              Page 3                              **F 4001-1.RFS.RP.MOTION**

(3) ☒ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify)*:


6. **Evidence in Support of Motion:  (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other: Exhibits: (1 - Legal Description, 2 - Endorsed Note, 3 - Recorded Deed of Trust, 4 - Assignment(s) of Deed of Trust, 5 - Loan Modification(s), 6 - Post-Petition Payment History)


7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☒ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☒ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date:  04/18/2024

Ghidotti | Berger
_____
Printed name of law firm (*if applicable*)
Shannon Doyle, Esq. (SBN 207291)
_____
Printed name of individual Movant or attorney for Movant

/s/ Shannon Doyle
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Melinda Stevens _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☒ Other (*specify*): I am a Bankruptcy Account Representative of Movant's loan server, SN Servicing Corporation.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit 2_____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit 3 & 4_.

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

      *Street address*: 521 East Montrose Street
      *Unit/suite no.*:
      *City, state, zip code*: Rialto, CA  92376

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

      See attached Exhibit 1.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 6                          F 4001-1.RFS.RP.MOTION

5. Type of property (*check all applicable boxes*):

   a. ☒ Debtor's principal residence          b. ☐ Other residence
   c. ☐ Multi-unit residential                d. ☐ Commercial
   e. ☐ Industrial                            f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☒ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☒ The Debtor  ☒ did  ☐ did not  list the Property in the Debtor's schedules.

   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.

      The deed was recorded on (*date*) _____.

7. Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 3____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit 2____.

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit 4____.

8. Amount of Movant's claim with respect to the Property:

|     |                                                   | PREPETITION | POSTPETITION | TOTAL |
| --- | ------------------------------------------------- | ----------- | ------------ | ------------- |
| a.  | Principal:                                        | $           | $            | $ 162,030.72  |
| b.  | Accrued interest:                                 | $           | $            | $ 1,444.34    |
| c.  | Late charges                                      | $           | $            | $ 294.24      |
| d.  | Costs (attorney's fees, foreclosure fees, other costs): | $     | $            | $ 5,464.91    |
| e.  | Advances (property taxes, insurance):             | $           | $            | $ 196.90      |
| f.  | Less suspense account or partial balance paid:    | $[        ] | $[        ]  | $[0.00      ] |
| g.  | TOTAL CLAIM as of (*date*): 04/16/2024            | $           | $            | $ 169,136.87  |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

   a. Notice of default recorded on (*date*) 07/02/2015  or ☐ none recorded.

   b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b. Number of payments that have come due and were not made: _____. Total amount: $_____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    **e. Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: 06/26/2019 .
A plan confirmation hearing currently scheduled for (or concluded on) the following date: 08/06/2019 .
A plan was confirmed on the following date (*if applicable*): 08/29/2019

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| 2 | | $ 1,242.35 | $ 2,484.70 |
| | 8 | $ 36.78 | $ 294.24 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid: $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs: $ 1,249.00
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance: $[                    ]

TOTAL POSTPETITION DELINQUENCY: $4,027.94

g. Future payments due by time of anticipated hearing date (*if applicable*): 05/01/2024 .
An additional payment of $ 1,242.35 will come due on 05/01/2024 , and on the 1st day of each month thereafter. If the payment is not received by the 10th day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$ 1,242.35 received on (*date*) 01/30/2024
$ 1,242.35 received on (*date*) 02/29/2024
$ 1,242.35 received on (*date*) 03/31/2024

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
            Chapter: _____   Case number: _____
            Date dismissed: _____   Date discharged: _____   Date filed: _____
            Relief from stay regarding the Property ☐ was ☐ was not granted.

        2. Case name: _____
            Chapter: _____   Case number: _____
            Date dismissed: _____   Date discharged: _____   Date filed: _____
            Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____
            Chapter: _____   Case number: _____
            Date dismissed: _____   Date discharged: _____   Date filed: _____
            Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 10                           **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/17/2024 | Melinda Stevens | _Melinda Stev___ |
|---|---|---|
| _Date_ | _Printed name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2017_                                            Page 11                                            **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1920 Old Tustin Avenue, Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  04/18/2024  , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Attorney: Benjamin Heston, Heston & Heston - bhestonecf@gmail.com
Chapter 13 Trustee: Rod Danielson - notice-efile@rodan13.com
U.S. Trustee: ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  04/18/2024   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed  no later than 24 hours after the document is filed.

Debtor: Richard Parnell, 521 E Montrose Street, Rialto, CA 92376
Co-Debtor: Kathleen Denise Juniel, 521 East Montrose Street, Rialto, CA 92376
Judge: The Honorable Scott H. Yun, U.S. Bankruptcy Court, 3420 Twelfth Street, Suite 345, Riverside, CA 92501-3819

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 04/18/2024 | Jodi Miller | /s/ Jodi Miller |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT "1"

Order No.:
Reference No.                    ₱ARNELL
Escrow Officer: Turner, Michelle
Escrow Number: ███████

## DESCRIPTION

All that certain land situated in the State of California, County of **SAN BERNARDINO,** City of
**RIALTO,** described as follows:

**LOT NO. 35 OF TRACT NO. 9912 AS PER MAP RECORDED IN BOOK 208 PAGES 18 AND 19 OF MAPS
IN THE OFFICE OF THE COUNTY RECORDER IN SAID COUNTY.**

APN No: **0132-053-35-0-000**

Page 7

EXHIBIT "2"

# NOTE

**FEBRUARY 22, 2005**                          **ESCONDIDO, CA 92025**
[Date]                              [City]                                [State]

**521 EAST MONTROSE STREET, RIALTO, CA 92376**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   **165,000.00**   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

**CENTEX HOME EQUITY COMPANY, LLC**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   **7.900**   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **APRIL 1, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **MARCH 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   **P.O. BOX 199400**
**DALLAS, TX 75219-9077**                                   or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $   **1,199.23**   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayments, I must still make each later payment as it becomes due and in the same amount. I may make a Full or Partial Prepayment at any time.

In the event, during the first **THIRTY SIX** ( **36** ) months after the execution of the Deed of Trust, I make a Full Prepayment or Partial Prepayment and the total of such prepayments in any twelve (12) month period exceeds twenty percent (20%) of the original Principal amount of the loan, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original Principal amount.

**CALIFORNIA FIXED RATE NOTE** - Single Family - **With Prepayment Penalty**

VMP®-105N(CA) (0303)                                                   3/03
Page 1 of 3                     Initials: _RP_
VMP MORTGAGE FORMS - (800)521-7291

(Page 3 of 5)

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. APPLICABLE LAW

This Note shall be governed by the laws of the State of California. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

-105N(CA)  (0303)                   Page 2 of 3                        Initials:  

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)                    _____(Seal)
RICHARD PARNELL                          -Borrower                                              -Borrower

_____(Seal)                    _____(Seal)
                                         -Borrower                                              -Borrower

_____(Seal)                    _____(Seal)
                                         -Borrower                                              -Borrower

_____(Seal)                    _____(Seal)
                                         -Borrower                                              -Borrower

*[Sign Original Only]*

**ALLONGE TO NOTE**

**LOAN NUMBER:**
**LOAN NUMBER:**

**ALLONGE TO NOTE DATED:**            2/22/2005

**LOAN AMOUNT:**            165,000.00

**PROPERTY ADDRESS:**

> 521 EAST MONTROSE STREET
> RIALTO, CALIFORNIA 92376

**IN FAVOR OF:**

> CENTEX HOME EQUITY COMPANY, LLC

**AND EXECUTED BY:**

> RICHARD PARNELL

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE:**

> CENTEX HOME EQUITY COMPANY, LLC

**BY:** _____

> Charla Calvery

**TITLE:**  Senior Auditor

**DATE:**  MAR 0 3 2005

MUDAOKA (111204)

EXHIBIT "3"

SDOT

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY

Recording Requested By:
**FIRST AMERICAN TITLE COMPANY**
**4540 CALIFORNIA AVENUE  SUITE 100**
**BAKERSFIELD, CALIFORNIA 93309**
Return To:
**Dallas, TX 75219**
**CENTEX HOME EQUITY COMPANY, LLC**
**P.O. BOX 199500, FINAL DOCS**
**Dallas, TX 75219**

Recorded in Official Records, County of San Bernardino

2/28/2005
1:00 PM
AR

**LARRY WALKER**
Auditor/Controller — Recorder

691  First American

Doc#:  **2005 — 0139093**

| Titles: | 1 | Pages: | 16 |
|---|---|---|---|
| Fees | | | 53.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $53.00 |

Prepared By:
**YVONNE MARTINEZ**
**350 Highland Drive**
**Lewisville, TX 75067**

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated
together with all Riders to this document.                    2/22/2005
**(B) "Borrower"** is

**RICHARD PARNELL AND**
**KATHLEEN DENISE JUNIEL HUSBAND AND WIFE AS JOINT TENANTS**

Borrower's address is    **521 EAST MONTROSE STREET**
**RIALTO, CALIFORNIA 92376**
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
**CENTEX HOME EQUITY COMPANY, LLC**
Lender is a    **A LIMITED LIABILITY COMPANY**
organized and existing under the laws of    **THE STATE OF DELAWARE**

**CALIFORNIA** -Single Family- **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**        **Form 3005 1/01**

-6(CA) (0207)
Page 1 of 15            Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is    **2828 NORTH HARWOOD**
                       **DALLAS, TX 75201-1516**

Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is
    **CENTEX CREDIT CORPORATION**

**(E) "Note"** means the promissory note signed by Borrower and dated        **2/22/2005**
The Note states that Borrower owes Lender
    **ONE HUNDRED SIXTY FIVE THOUSAND & 00/100**                                        Dollars
(U.S. $        **165,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than        **3/01/2035**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials: _RV'//.OL_

VMP -6(CA) (0207)                        Page 2 of 15                        Form 3005  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | SAN BERNARDINO | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.


## SEE EXHIBIT A


| Parcel ID Number: | 0132053350000 | | which currently has the address of |
| | 521 EAST MONTROSE STREET | | [Street] |
| | RIALTO | [City], California | 92376 | [Zip Code] |
| ("Property Address"): | | | |

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

Initials: *RP KOL*

VMP -6(CA) (0207)    Page 3 of 15    Form 3005  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

Initials: _KV·NOH_

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the
actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting
service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the
Property insured against loss by fire, hazards included within the term "extended coverage," and any other
hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This
insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender
requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan.
The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to
disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require
Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination,
certification and tracking services; or (b) a one-time charge for flood zone determination and certification
services and subsequent charges each time remappings or similar changes occur which reasonably might
affect such determination or certification. Borrower shall also be responsible for the payment of any fees
imposed by the Federal Emergency Management Agency in connection with the review of any flood zone
determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance
coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any
particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not
protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard
or liability and might provide greater or lesser coverage than was previously in effect. Borrower
acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of
insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall
become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at
the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender
to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's
right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as
mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to
insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall
have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give
to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance
coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall
include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee
and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to
the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may
make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in
writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be
applied to restoration or repair of the Property, if the restoration or repair is economically feasible and
Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to
hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work
has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.
Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress
payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires
interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or
earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be
paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is
not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to

the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _____

-6(CA) (0207)                          Page 7 of 15                          **Form 3005  1/01**

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage**

Initials: _LP · ACH._

VMP -6(CA) (0207)                    Page 8 of 15                    Form 3005  1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

   **11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

   If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

   In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

   If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

   Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

   All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

   **12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall

Initials: _RP /CH_

🔵 -6(CA) (0207)          Page 10 of 15          Form 3005  1/01

not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

Initials: _P̃Y. ADL_

VMP®-6(CA) (0207)          Page 11 of 15          Form 3005  1/01

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _____

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                     RICHARD PARNELL              -Borrower

_____          _____ (Seal)
                                     KATHLEEN DENISE JUNIEL       -Borrower

_____ (Seal)   _____ (Seal)
                     -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                     -Borrower                            -Borrower

_____ (Seal)   _____ (Seal)
                     -Borrower                            -Borrower

VMP®-6(CA) (0207)                Page 14 of 15                Form 3005  1/01

**State of California**
**County of** San Bernardino           } **ss.**

On  2/23/05           before me, Cheryl A. Daniels, Notary Public
                                                                      personally appeared

RICHARD PARNELL
KATHLEEN DENISE JUNIEL

, personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

CHERYL A. DANIELS
Commission # 1422127
Notary Public - California
San Bernardino County
My Comm. Expires Jul 2, 2007

Order No.:
Reference No.              ʔARNELL
Escrow Officer: Turner, Michelle
Escrow Number: ███████

## DESCRIPTION

All that certain land situated in the State of California, County of **SAN BERNARDINO,** City of **RIALTO,** described as follows:

**LOT NO. 35 OF TRACT NO. 9912 AS PER MAP RECORDED IN BOOK 208 PAGES 18 AND 19 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER IN SAID COUNTY.**

APN No: **0132-053-35-0-000**

EXHIBIT "4"

Recorded in Official Records, County of San Bernardino                6/09/2015
                                                                     8:00 AM
**BOB DUTTON**                                                        BS
ASSESSOR – RECORDER – CLERK                                          SAN

867 **SPL Title Services**

Recording requested by:

**Title365**

When recorded mail to:

Doc#: **2015-0237923**    Titles: 1    Pages: 3

Nationstar Mortgage LLC
8950 Cypress Waters Boulevard
Coppell, TX 75019

| | |
|---|---|
| Fees | 31.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $31.00 |

TS No.: ▮▮▮▮▮▮▮

Order No.: ▮▮▮▮▮▮

Space above this line for recorders use

## Assignment of Deed of Trust

APN No.: **0132-053-35-0-000**

For value received, the undersigned corporation hereby grants, assigns, and transfers to The Bank of New York Mellon f/k/a The Bank of New York, successor to JPMorgan Chase Bank, N.A., as Trustee for Centex Home Equity Loan Trust 2005-C

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated **2/22/2005** executed by **RICHARD PARNELL AND KATHLEEN DENISE JUNIEL HUSBAND AND WIFE AS JOINT TENANTS,** as Trustor(s) to **CENTEX CREDIT CORPORATION,** as Trustee and recorded as Instrument No. **2005-0139093,** on **2/28/2005,** of Official Records, in the office of the County Recorder of **SAN BERNARDINO** County, **CA,** that secures the underlying promissory note.

TS No.: 

Page 2

JUN 0 5 2015

**Nationstar Mortgage LLC, fka Centex Home Equity Company, LLC, by Quality Loan Service Corporation as its Attorney in Fact**

By: Long Do, Assistant Secretary

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of: **California**)

County of: **San Diego**)

On 6|5|2015 before me, **COURTNEY PATANIA** _____ a notary public, personally appeared _____Long Do_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          **(Seal)**

_____
Signature

COURTNEY PATANIA

COURTNEY PATANIA
Commission # 2044156
Notary Public - California
San Diego County
My Comm. Expires Nov 1, 2017

# ILLEGIBLE NOTARY SEAL DECLARATION

**GOVERNMENT CODE 27361.7**
**I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:**

Name of Notary                     *Courtney Patania*

Notary Identification Number       ████████████

County Where Bond Is Filed         *San Diego*

Date Commission Exp                *nov 1, 2017*

SPL, Inc. as agent

DATE: 6 / 9 / 2015                  _____
                                            Signature

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



Recorded in Official Records, County of San Bernardino

**BOB DUTTON**
ASSESSOR – RECORDER – CLERK

C Priority Mail

Doc# 2018 – 0287443



8/07/2018
2:04 PM
JC
SAN

| Titles | 1 | Pages | 2 |
|---|---|---|---|
| Fees | | | 27.00 |
| Taxes | | | 0.00 |
| CA SB2 Fee | | | 75.00 |
| Others | | | 0.00 |
| Paid | | | $102.00 |

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR CENTEX HOME EQUITY LOAN TRUST 2005-C, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019,** (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019 (469)549-2000, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **RICHARD PARNELL AND KATHLEEN DENISE JUNIEL** and recorded on 02/28/2005 as **Doc # 2005-0139093** in the office of the **SAN BERNARDINO** County Recorder, **CA**.

Dated on __7/31__/2018 (MM/DD/YYYY)
**THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR CENTEX HOME EQUITY LOAN TRUST 2005-C, by NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, its Attorney-in-Fact**

By: _____
    Francis DeNardo
    **Vice President of Loan Documentation**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Documents provided by DataTree LLC via it's proprietary imaging and delivery system  Copyright 2003, All rights reserved

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___7,31___ /2018 (MM/DD/YYYY), by Francis DeNardo as Vice
President of Loan Documentation of NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER as Attorney-in-Fact for THE BANK
OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS SUCCESSOR IN INTEREST TO JPMORGAN CHASE
BANK, N.A., AS TRUSTEE FOR CENTEX HOME EQUITY LOAN TRUST 2005-C, who, as such Vice President of Loan
Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are)
personally known to me.

Alyssa Say GG167252
Notary Public - State of FLORIDA
Commission expires: 10/02/2018

ALYSSA SAY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG167252
EXPIRES: 10/2/2018

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683

- 2 of 2 -

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING, INC.

[AND WHEN RECORDED MAIL TO]
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Recorded in Official Records, County of San Bernardino



**BOB DUTTON**
ASSESSOR – RECORDER – CLERK

8/07/2018
2:04 PM
JC
SAN

C  Priority Mail

Doc# 2018-0287444

| Titles | 1 | Pages | 1 |
|---|---|---|---|
| Fees | | | 24.00 |
| Taxes | | | 0.00 |
| CA SB2 Fee | | | 75.00 |
| Others | | | 0.00 |
| Paid | | | $99.00 |

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI, WHOSE ADDRESS IS CITI AGENCY & TRUST, 17400 BROOKHURST ST., SUITE 207, FOUNTAIN VALLEY, CA 92708, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by RICHARD PARNELL AND KATHLEEN DENISE JUNIEL and recorded on 02/28/2005 as **Doc #2005-0139093** in the office of the **SAN BERNARDINO** County Recorder, **CA**.

Dated on ___7 / 31___ /2018 (MM/DD/YYYY)
NATIONSTAR MORTGAGE LLC

By: _____
    Francis DeNardo
    Vice President of Loan Documentation

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___7 / 31___ /2018 (MM/DD/YYYY), by Francis DeNardo as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Alyssa Say GG167252
Notary Public - State of FLORIDA
Commission expires: 10/02/2018

ALYSSA SAY
NOTARY PUBLIC
STATE OF FLORIDA
COMM# GG167252
EXPIRES: 10/2/2018

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683



Recorded in Official Records
County of San Bernardino
Bob Dutton
Assessor-Recorder-County Clerk

Recording Requested By:
Meridian Asset Services

**DOC# 2020-0005584**

Prepared By and Return To:
**Maged Farag**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

| | |
|---|---|
| 01/07/2020 | Titles: 1    Pages: 2 |
| 08:46 AM | |
| SAN | |
| | Fees          $27.00 |
| C9900 | Taxes         $0.00 |
| | CA SB2 Fee    $75.00 |
| | Total        $102.00 |

Loan No: _____    _____ Space above for Recorder's use _____

*Rec 1st*

### ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI**, whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **2/22/2005**
Original Loan Amount: **$165,000.00**
Executed by (Borrower(s)): **RICHARD PARNELL & KATHLEEN DENISE JUNIEL**
Original Trustee: **CENTEX CREDIT CORPORATION**
Original Beneficiary: **CENTEX HOME EQUITY COMPANY, LLC**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 2005-0139093 in the Recording District of **SAN BERNARDINO, CA**, Recorded on **2/28/2005**.

Property more commonly described as: **521 EAST MONTROSE STREET, RIALTO, CALIFORNIA 92376**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ **OCT 11 2019** _____

**CITIBANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI, BY NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER, ITS ATTORNEY-IN-FACT**

By: _____
Title: _____
     Daniela Horvath
     Vice President

Witness Name: _____
     **Tsedale Alemu**

NRZ July2018

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of __Texas__
County of __Dallas__

On __OCT 11 2019__, before me, __Sylvia Ramirez__, a Notary Public, personally
appeared __Daniela Horvath__, __Vice President__ of/for NATIONSTAR
MORTGAGE LLC D/B/A MR. COOPER, AS ATTORNEY-IN-FACT FOR CITIBANK, N.A., NOT IN ITS
INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF NRZ PASS-THROUGH TRUST VI,
personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of __Texas__ that
the foregoing paragraph is true and correct. I further certify __Daniela Horvath__, signed, sealed,
attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): __Sylvia Ramirez__
My commission expires: __MAR 07 2023__

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660

NRZ July2018

Recording Requested By:
Meridian Asset Services



Recorded in Official Records
County of San Bernardino
Bob Dutton
Assessor-Recorder-County Clerk

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711

## DOC# 2020-0005585

| 01/07/2020 08:46 AM SAN | Titles: 1 | Pages: 2 |
|---|---|---|
| | Fees | $27.00 |
| | Taxes | $0.00 |
| C9900 | CA SB2 Fee | $75.00 |
| | Total | $102.00 |

Loan No:

Space above for Recorder's use

Mee 2nd



## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, and any rights due or to become due thereon.

Date of Deed of Trust: 2/22/2005
Original Loan Amount: $165,000.00
Executed by (Borrower(s)): **RICHARD PARNELL & KATHLEEN DENISE JUNIEL**
Original Trustee: **CENTEX CREDIT CORPORATION**
Original Beneficiary: **CENTEX HOME EQUITY COMPANY, LLC**
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: **2005-0139093** in the Recording District of **SAN BERNARDINO, CA**, Recorded on **2/28/2005**.

Property more commonly described as: **521 EAST MONTROSE STREET, RIALTO, CALIFORNIA 92376**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **OCT 2 4 2019**

**MTGLQ INVESTORS, L.P.**

By: **MATT FANKHAUSER**
Title: **VICE PRESIDENT**

Witness Name: Amanda Cunningham

NRZ July2018

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of    **TEXAS**
County of    **DALLAS**

On ____ **OCT 2 4 2019** ____, before me, ____ **Sindy Garcia** ____, a Notary Public, personally appeared **MATT FANKHAUSER, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify MATT FANKHAUSER, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____
                Sindy Garcia

(Notary Name): _____
My commission expires: ____ **APR 1 0 2021**

SINDY GARCIA
Notary Public, State of Texas
Comm. Expires 04-10-2021
Notary ID 131081906

NRZ July2018



Recording Requested By:
Meridian Asset Services

Prepared By and Return To:
Maged Farag
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
███████████

Recorded in Official Records
County of San Bernardino

Bob Dutton
Assessor-Recorder-County Clerk

DOC # 2020-0039374

| 02/03/2020 | Titles: 1   Pages: 2 |
| 08:10 AM | |
| SAN | Fees:        $27.00 |
| | Taxes:        $0.00 |
| I4609 | CA SB2 Fee: $75.00 |
| | Total:       $102.00 |

Loan No:

_____ Space above for Recorder's use _____

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CABANA SERIES III TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: 2/22/2005
Original Loan Amount: $165,000.00
Executed by (Borrower(s)): RICHARD PARNELL & KATHLEEN DENISE JUNIEL
Original Trustee: CENTEX CREDIT CORPORATION
Original Beneficiary: CENTEX HOME EQUITY COMPANY, LLC
Filed of Record: In Book N/A, Page N/A
Document/Instrument No: 2005-0139093 in the Recording District of **SAN BERNARDINO, CA**, Recorded on 2/28/2005.

Property more commonly described as: 521 EAST MONTROSE STREET, RIALTO, CALIFORNIA 92376

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 1/22/2020

US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: MURAT DENIZ
Title: VICE PRESIDENT

Witness Name: TIM KRESHPANJI

NRZ_Jul18

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of     **FLORIDA**
County of   **PINELLAS**

On 1/22/2020, before me, **JAMIE OLGIA**, a Notary Public, personally appeared **MURAT DENIZ, VICE
PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK
TRUST NATIONAL ASSOCIATION AS TRUSTEE OF CHALET SERIES III TRUST**, personally known to
me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify
under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and
correct. I further certify MURAT DENIZ, signed, sealed, attested and delivered this document as a voluntary act in
my presence.

Witness my hand and official seal.

(Notary Name): **JAMIE OLGIA**
My commission expires: 04/12/2020

JAMIE OLGIA
MY COMMISSION # FF 981366
EXPIRES: April 12, 2020
Bonded Thru Budget Notary Services

EXHIBIT "5"

**Recording Requested By:**
NATIONSTAR MORTGAGE LLC

**After Recording Return To:**
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

**This Document Prepared By:**
*Brandon Boyd*
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

**Parcel ID Number:**

_____ [Space Above This Line For Recording Data] _____
Original Loan Amount: **$165,000.00**                                    Loan No.

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): **RICHARD PARNELL**. Dated this _18TH_ day of _NOV_, _2015_. If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"): **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
_____, ____ and recorded in Book/Liber **N/A**, Page **N/A**, Instrument No: **N/A**, of the Official Records of  County, **CA**.
Property Address ("Property"): **521 EAST MONTROSE STREET**
                                        **RIALTO, CA 92376**

  Legal Description:

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send

8306 01/14                                                        Form 3157 3/09 (rev. 10/10) *(page 1 of 6 pages)*

me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree:
    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;
    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G.  I have made or will make all payments required under a trial period plan.
    H.  In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:
    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.**  If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **December 1, 2015** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect.  The first modified payment will be due on **December 1, 2015**.
    A.  The Maturity Date will be: **November 1, 2055**.
    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$186,270.58** (the "New Principal Balance"). I understand that by agreeing to

add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of **3.625%** will begin to accrue on the New Principal Balance as of **November 1, 2015** and the first new monthly payment on the New Principal Balance will be due on **December 1, 2015**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------|-------------------------------|-----------------------|-------------------|----------------------------|
| 1-40  | 3.625%        | November 01, 2015         | $735.63                           | $606.75 May adjust periodically | $1,342.38 May adjust periodically | December 01, 2015 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan

or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents. except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan

Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

_____   01 / 18 / 15 _____ (Seal)
**RICHARD PARNELL** -Borrower

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14                                                    Form 3157  3/09  (rev. 10/10) (page 5 of 6 pages)

NATIONSTAR MORTGAGE LLC

By: _____ (Seal) - Lender

Name: _Brandon Boyd_

Title: **Assistant Secretary**

_____11/30/15_____

Date of Lender's Signature

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
8306 01/14

Form 3157  3/09  (rev. 10/10) *(page 6 of 6 pages)*

Loan No.:
Borrower: RICHARD PARNELL

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, RICHARD PARNELL ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated **Nov /8 ℓ , 2o ιᴓ** (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property;  (b) leasehold payments or ground rents on the Property, if any;  (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums.  These items are called "Escrow Items."  In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law.  In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount.  Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA").  The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender.  Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.  Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA.  If there is a deficiency

Loan No.:
Borrower: RICHARD PARNELL

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

_____     Date: 11-18-15

**RICHARD PARNELL** -Borrower

# EXHIBIT "6"

Borrower: RICARD PARNELL

Loan:

|  |  |  |  |  |  |  | BORROWER PAYS ONGOING/TRUSTEE PAYS ARREARS |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  | Bk Case # 19-14348 |  |  |  |  |  |  |  |  |  |
| Date rec'd | Days | Date Due / Description | Total Pd. | Amt. Pd. | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Pmt/Disb | APO Balance | APO Filed Pmt/Disb | PPFN Balance | PPFN Filed Pmnt/Disb | Late Chg Balance | Late Chg Pmt/Disb | Suspense | Prin. Bal. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/20/19 |  | BK Filed |  |  |  | 0.00 |  | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 176,962.41 |
| 05/20/19 |  | 08/01/18 05/01/19 Escrow Deficiency | 7,356.30 | 7,356.30 | (3,524.96) | 0.00 | (7,356.30) | (7,356.30) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 174,924.30 |
| 05/20/19 |  | Escrow Deficiency | 0.00 | 0.00 | (3,524.96) | 0.00 | (10,881.26) | (3,524.96) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 174,924.30 |
| 05/20/19 |  | Escrow Shortage | 0.00 | 0.00 | (3,524.96) | 0.00 | (10,881.26) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 174,924.30 |
| 05/20/19 |  | Prepetition Fees | 0.00 | 0.00 | (3,524.96) | 0.00 | (12,026.52) | (1,145.26) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 174,924.30 |
| 05/20/19 |  | Unapplied | 0.00 | 0.00 | (3,524.96) | 0.00 | (12,026.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 174,924.30 |
| 05/20/19 |  |  | 0.00 | 0.00 | (3,524.96) | 0.00 | (12,026.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 174,924.30 |
| 07/31/19 | 30 | 06/01/19  Due for 06/01/2019 / Total Pmnt: $1256.83 / P&I: $735.63 / Escrow: $521.20 | 1,256.83 | 735.63 | (3,003.76) | 521.20 | (12,026.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 174,717.09 |
| 10/02/19 |  | Short Pmnt | 380.00 | 0.00 | (3,003.76) | 0.00 | (12,026.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 380.00 | 174,717.09 |
| 10/17/19 |  | Short Pmnt | 230.00 | 0.00 | (3,003.76) | 0.00 | (12,026.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 680.00 | 174,717.09 |
| 11/12/19 |  | Arrears | 163.49 | 0.00 | (3,003.76) | 0.00 | (11,863.03) | 163.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 680.00 | 174,717.09 |
| 12/03/19 |  | Escrow Disb | 0.00 | 0.00 | (4,826.22) | (1,822.46) | (11,863.03) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 680.00 | 174,717.09 |
| 12/03/19 |  | Short Pmnt | 380.00 | 0.00 | (4,826.22) | 0.00 | (11,863.03) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 980.00 | 174,717.09 |
| 12/04/19 |  | Short Pmnt | 50.00 | 0.00 | (4,826.22) | 0.00 | (11,863.03) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,040.00 | 174,717.09 |
| 12/06/19 |  | Short Pmnt | 150.00 | 0.00 | (4,826.22) | 0.00 | (11,863.03) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,190.00 | 174,717.09 |
| 12/13/19 |  | Arrears | 234.87 | 0.00 | (4,826.22) | 0.00 | (11,628.16) | 234.87 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,190.00 | 174,717.09 |
| 07/31/19 | 30 | 07/01/19 | 600.00 | 735.63 | (4,305.02) | 521.20 | (11,628.16) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 533.17 | 174,509.25 |
| 01/14/20 |  | Arrears | 209.48 | 0.00 | (4,305.02) | 0.00 | (11,418.68) | 209.48 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 533.17 | 174,509.25 |
| 01/16/20 |  | Short Pmnt | 100.00 | 0.00 | (4,305.02) | 0.00 | (11,418.68) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 633.17 | 174,509.25 |
| 01/23/20 |  | Short Pmnt | 300.00 | 0.00 | (4,305.02) | 0.00 | (11,418.68) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 933.17 | 174,509.25 |
| 02/04/20 | 30 | 08/01/19 | 500.00 | 735.63 | (3,783.82) | 521.20 | (11,418.68) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 176.34 | 174,300.78 |
| 02/04/20 |  | Arrears | 398.08 | 0.00 | (3,783.82) | 0.00 | (11,027.60) | 398.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 176.34 | 174,300.78 |
| 02/18/20 |  | Short Pmnt | 650.00 | 0.00 | (3,783.82) | 0.00 | (11,027.60) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 826.34 | 174,300.78 |
| 02/25/20 |  | Escrow Disb | 0.00 | 0.00 | (5,404.82) | (1,621.00) | (11,027.60) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 826.34 | 174,300.78 |
| 02/27/20 |  | Short Pmnt | 200.00 | 0.00 | (5,404.82) | 0.00 | (11,027.60) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,026.34 | 174,300.78 |
| 03/03/20 |  | Escrow Disb | 0.00 | 0.00 | (5,404.82) | 0.00 | (11,027.60) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,026.34 | 174,300.78 |
| 09/01/19 | 30 | 09/01/19 | 450.00 | 735.63 | (4,883.62) | 521.20 | (11,027.60) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219.51 | 174,091.69 |
| 03/06/20 |  | Arrears | 244.91 | 0.00 | (4,883.62) | 0.00 | (10,782.69) | 244.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219.51 | 174,091.69 |
| 03/17/20 |  | Escrow Disb | 0.00 | 0.00 | (6,706.06) | (1,822.44) | (10,782.69) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 219.51 | 174,091.69 |
| 03/17/20 |  | Short Pmnt | 650.00 | 0.00 | (6,706.06) | 0.00 | (10,782.69) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 869.51 | 174,091.69 |
| 03/30/20 | 30 | 10/01/19 | 400.00 | 735.63 | (6,184.86) | 521.20 | (10,782.69) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12.68 | 173,880.96 |
| 03/31/20 |  | Short Pmnt | 490.00 | 0.00 | (6,184.86) | 0.00 | (10,782.69) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 502.68 | 173,880.96 |
| 04/01/20 |  | Short Pmnt | 200.00 | 0.00 | (6,184.86) | 0.00 | (10,782.69) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 702.68 | 173,880.96 |
| 04/01/20 | 30 | 11/01/19 | 1,030.00 | 735.63 | (5,663.66) | 521.20 | (10,782.69) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 702.68 | 173,880.96 |
| 04/14/20 |  | Arrears | 700.00 | 0.00 | (5,663.66) | 0.00 | (10,745.24) | 37.45 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 454.85 | 173,880.96 |
| 04/14/20 | 30 | 11/01/19 | 1,300.00 | 0.00 | (5,663.66) | 0.00 | (10,745.24) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,154.85 | 173,880.96 |
| 04/16/20 |  | Short Pmnt | 303.89 | 0.00 | (5,663.66) | 0.00 | (10,745.24) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,098.02 | 173,667.60 |
| 05/12/20 | 30 | 12/01/19 | 650.00 | 735.63 | (5,142.46) | 521.20 | (10,745.24) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,198.02 | 173,667.60 |
| 05/12/20 |  | Arrears | 650.00 | 0.00 | (5,142.46) | 0.00 | (10,441.65) | 303.89 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 591.19 | 173,667.60 |
| 01/20/20 |  | Short Pmnt | 0.00 | 0.00 | (4,621.26) | 521.20 | (10,441.65) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 173,460.60 |
| 05/19/20 |  | Short Pmnt | 735.63 | 735.63 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 173,248.96 |
| 05/20/20 |  | Short Pmnt | 735.63 | 735.63 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 173,248.96 |
|  |  | APO | 0.00 | 0.00 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 173,248.96 |
| 02/01/20 | 30 |  | 735.63 | 735.63 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | (735.63) | (735.63) | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 173,036.69 |
| 03/01/20 | 30 |  | 735.63 | 735.63 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | (1,471.26) | (735.63) | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 172,823.78 |
| 04/01/20 | 30 |  | 735.63 | 735.63 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | (2,206.89) | (735.63) | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 172,600.22 |

| Date rec'd | Days | Date Due/ Description | Total Pd. | Amt. Pd. | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Pmt/Dish | APO Balance | APO Filed Pmt/Dish | PPFN Balance | PPFN Filed Pmnt/Dish | Late Chg Balance | Late Chg Pmt/Dish | Suspense | Prin. Bal. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/01/20 | 30 | | 735.63 | 735.63 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | (2942.52) | (735.63) | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 172,596.01 |
| | | Escrow Claimed | 0.00 | 0.00 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | (4289.58) | (1347.06) | 0.00 | 0.00 | 0.00 | 0.00 | 1,241.19 | 172,596.01 |
| | | | 0.00 | 0.00 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | (3048.39) | 1241.19 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 172,596.01 |
| | | | 0.00 | 0.00 | (4,621.26) | 0.00 | (10,441.65) | 0.00 | (3048.39) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 172,596.01 |
| 06/16/20 | | Arrears | 94.82 | 0.00 | (4,621.26) | 0.00 | (10,346.83) | 94.82 | (3048.39) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 172,596.01 |
| 06/17/20 | | APO Arrears | 508.07 | 0.00 | (4,621.26) | 0.00 | (10,346.83) | 0.00 | (2540.32) | 508.07 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 172,596.01 |
| 07/02/20 | 30 | 06/01/20 | 1,167.46 | 735.63 | (4,189.43) | +31.83 | (10,346.83) | 0.00 | (2540.32) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 172,181.16 |
| 07/13/20 | | Arrears | 212.93 | 0.00 | (4,189.43) | 0.00 | (10,133.90) | 212.93 | (2540.32) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 172,181.16 |
| 07/16/20 | | APO Arrears | 508.07 | 0.00 | (4,189.43) | 0.00 | (10,133.90) | 0.00 | (2032.25) | 508.07 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 171,965.66 |
| 07/21/20 | 30 | 07/01/20 | 1,167.46 | 735.63 | (3,757.60) | +31.83 | (10,133.90) | 0.00 | (2032.25) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 171,965.66 |
| 08/11/20 | | Arrears | 141.74 | 0.00 | (3,757.60) | 0.00 | (9,992.16) | 141.74 | (2032.25) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 171,749.51 |
| 08/18/20 | | APO Arrears | 508.07 | 0.00 | (3,757.60) | 0.00 | (9,992.16) | 0.00 | (1524.18) | 508.07 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 171,749.51 |
| 09/01/20 | 30 | 08/01/20 | 1,167.46 | 735.63 | (3,325.77) | +31.83 | (9,992.16) | 0.00 | (1524.18) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 171,749.51 |
| 09/15/20 | | Arrears | 129.47 | 0.00 | (3,325.77) | 0.00 | (9,862.69) | 129.47 | (1524.18) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 171,749.51 |
| 09/17/20 | | APO Arrears | 508.07 | 0.00 | (3,325.77) | 0.00 | (9,862.69) | 0.00 | (1016.11) | 508.07 | 0.00 | 0.00 | 0.00 | 0.00 | (0.00) | 171,532.71 |
| 10/02/20 | | Short Pmt | 1,096.01 | 735.63 | (3,325.77) | 0.00 | (9,862.69) | 0.00 | (1016.11) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,096.01 | 171,315.25 |
| 10/19/20 | | APO Arrears | 508.07 | 0.00 | (2,893.94) | +31.83 | (9,862.69) | 0.00 | (508.04) | 508.07 | 0.00 | 0.00 | 0.00 | 0.00 | 1,096.01 | 171,315.25 |
| 11/04/20 | 30 | APO Arrears | 71.46 | 0.00 | (2,462.11) | +31.83 | (9,862.69) | 0.00 | (508.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 | 171,315.25 |
| 11/10/20 | | Arrears | 1,167.46 | 735.63 | (2,462.11) | +31.83 | (9,845.86) | 16.83 | (508.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 | 171,315.25 |
| 11/13/20 | | Arrears | 16.83 | 0.00 | (2,462.11) | 0.00 | (9,845.86) | 0.00 | (508.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 | 171,315.25 |
| 10/17/20 | | Escrow Disb | 0.00 | 0.00 | (4,322.67) | (1,860.56) | (9,845.86) | 0.00 | (508.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.01 | 171,315.25 |
| 11/23/20 | | APO Arrears | 508.07 | 0.00 | (4,322.67) | 0.00 | (9,845.86) | 0.00 | 0.00 | 508.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.04 | 171,315.25 |
| 12/15/20 | | Arrears | 128.67 | 0.00 | (4,322.67) | 0.00 | (9,717.19) | 128.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.04 | 171,315.25 |
| 12/21/20 | | Short Pmt | 508.07 | 0.00 | (4,322.67) | 0.00 | (9,717.19) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 508.11 | 171,315.25 |
| 01/05/21 | 30 | Arrears | 659.39 | 735.63 | (3,890.84) | +31.83 | (9,717.19) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.04 | 171,097.14 |
| 01/12/21 | | Arrears | 128.24 | 0.00 | (3,890.84) | 0.00 | (9,588.95) | 128.24 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.04 | 171,097.14 |
| 01/27/21 | | Arrears | 262.49 | 0.00 | (3,890.84) | 0.00 | (9,588.95) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.53 | 171,097.14 |
| 02/12/21 | 30 | | 1,167.46 | 735.63 | (3,459.01) | +31.83 | (9,588.95) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.54 | 170,878.36 |
| 02/17/21 | 30 | | 1,167.46 | 735.63 | (3,027.18) | +31.83 | (9,588.95) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.54 | 170,658.93 |
| 02/17/21 | | Escrow Disb | 0.00 | 0.00 | (4,013.13) | (1,574.15) | (9,588.95) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.54 | 170,658.93 |
| 03/16/21 | | Arrears | 34.71 | 0.00 | (4,013.13) | 0.00 | (9,554.24) | 34.71 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.54 | 170,658.93 |
| 03/16/21 | | Escrow Disb | 0.00 | 0.00 | (6,461.87) | (1,860.54) | (9,554.24) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.54 | 170,658.93 |
| 03/30/21 | 30 | Arrears | 1,167.46 | 735.63 | (6,030.04) | +31.83 | (9,554.24) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.54 | 170,438.83 |
| 04/13/21 | 30 | Arrears | 1,167.47 | 735.63 | (5,598.21) | +31.83 | (9,415.95) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 170,218.07 |
| 04/13/21 | | Arrears | 138.29 | 0.00 | (5,598.21) | 0.00 | (9,415.95) | 138.29 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 170,218.07 |
| | | Due for 04/01/2021 Total Pmnt: $1173.72 P&I: $735.63 Escrow: $438.09 | 0.00 | 0.00 | (5,598.21) | 0.00 | | | | | | | | | 0.00 | |
| 04/27/21 | 30 | | 1,173.72 | 735.63 | (5,160.12) | +38.09 | (9,415.95) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 170,218.07 |
| 04/27/21 | | Arrears | 58.42 | 0.00 | (5,160.12) | 0.00 | (9,357.53) | 58.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,996.64 |
| 05/12/21 | 30 | Arrears | 1,173.72 | 735.63 | (4,722.03) | +38.09 | (9,357.53) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,996.64 |
| 05/24/21 | | | 0.00 | 0.00 | (4,722.03) | 0.00 | (9,357.53) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,774.54 |
| 06/16/21 | | Transfer to SN | 1,173.72 | 735.63 | (4,283.94) | +38.09 | (9,357.53) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,774.54 |
| 07/06/21 | | Arrears | 1,173.72 | 735.63 | (4,283.94) | 0.00 | (9,208.55) | 148.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,551.76 |
| 07/06/21 | 30 | Arrears | 148.98 | 0.00 | (4,283.94) | +38.09 | (9,208.55) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,551.76 |
| 07/14/21 | | Arrears | 111.40 | 0.00 | (4,283.94) | 0.00 | (9,097.15) | 111.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,551.76 |
| 07/31/21 | 30 | Arrears | 1,173.72 | 735.63 | (3,845.85) | +38.09 | (9,097.15) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,328.32 |
| 08/06/21 | | Arrears | 281.22 | 0.00 | (3,845.85) | 0.00 | (8,815.93) | 281.22 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,328.32 |
| 09/13/21 | 30 | Arrears | 1,173.72 | 735.63 | (3,407.76) | +38.09 | (8,815.93) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,104.20 |
| 09/16/21 | | Arrears | 109.30 | 0.00 | (3,407.76) | 0.00 | (8,706.63) | 109.30 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26.255 | 169,104.20 |

| Date rec'd | Days | Date Due/ Description | Total Pd. | Amt. Pd. | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Pmt/ Disb | APO Balance | APO Filed Pmt/ Disb | PPFN Balance | PPFN Filed Pmt/ Disb | Late Chg Balance | Late Chg Pmt/ Disb | Suspense | Prin. Bal. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/14/21 | | Arrears | 93.77 | 0.00 | (3,407.76) | 0.00 | (8,612.86) | 93.77 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 169,104.20 |
| 10/25/21 | 30 | Arrears | 1,173.72 | 735.63 | (2,969.67) | 438.09 | (8,612.86) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,879.41 |
| 11/19/21 | | Arrears | 82.03 | 0.00 | (2,969.67) | 0.00 | (8,550.83) | 82.03 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,879.44 |
| 12/02/21 | | County Tax Disb | 0.00 | 0.00 | (4,824.30) | (1,854.65) | (8,550.83) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,879.44 |
| 12/06/21 | 30 | Arrears | 1,173.72 | 735.63 | (4,386.21) | 438.09 | (8,550.83) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,653.93 |
| 12/14/21 | | Arrears | 112.84 | 0.00 | (4,386.21) | 0.00 | (8,447.99) | 112.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,653.93 |
| 12/20/21 | 30 | Arrears | 1,173.72 | 735.63 | (3,948.12) | 438.09 | (8,447.99) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,427.78 |
| 01/12/22 | | Arrears | 130.46 | 0.00 | (3,948.12) | 0.00 | (8,287.53) | 130.46 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,427.78 |
| 01/17/22 | 30 | Arrears | 1,173.72 | 735.63 | (3,510.03) | 438.09 | (8,287.53) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 168,200.94 |
| 02/07/22 | | Arrears | 130.28 | 0.00 | (3,071.94) | 0.00 | (8,157.25) | 130.28 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,973.42 |
| 02/16/22 | | Arrears | 1,173.72 | 735.63 | (3,071.94) | 438.09 | (8,157.25) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,973.42 |
| 03/08/22 | | Homeowners Insurance | 0.00 | 0.00 | (2,613.85) | 0.00 | (8,157.25) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,973.42 |
| 03/17/22 | | APO Escrow to Escrow | 1,347.06 | 0.00 | (4,360.00) | 1,347.06 | (8,157.25) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,745.21 |
| 03/17/22 | | Arr Escrow to Escrow | 871.82 | 0.00 | (3,012.94) | 871.82 | (8,157.25) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,745.21 |
| 03/17/22 | | Arr Escrow Adjustment | 2,141.12 | 0.00 | (2,141.12) | 2,141.12 | (8,157.25) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,745.21 |
| 03/18/22 | | Arrears | 129.92 | 0.00 | 0.00 | 0.00 | (8,027.33) | 129.92 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,745.21 |
| 03/29/22 | | County Tax Disb | 0.00 | 0.00 | 0.00 | 0.00 | (8,027.33) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,745.21 |
| 03/03/22 | 30 | Arrears | 1,173.72 | 735.63 | (1,854.60) | 438.09 | (8,027.33) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,745.21 |
| 04/13/22 | | Arrears | 129.55 | 0.00 | (1,416.51) | 0.00 | (7,897.78) | 129.55 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,516.31 |
| 04/04/22 | 30 | Arrears | 1,173.72 | 735.63 | (1,416.51) | 438.09 | (7,897.78) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,516.31 |
| 05/09/22 | | Arrears | 106.01 | 0.00 | (978.42) | 0.00 | (7,791.77) | 106.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,286.72 |
| 05/17/22 | | Arrears | 1,267.71 | 735.63 | (978.42) | 438.09 | (7,791.77) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,286.72 |
| 05/06/22 | | Arrears | 128.54 | 0.00 | (540.33) | 0.00 | (7,663.23) | 128.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 262.55 | 167,056.43 |
| 06/14/22 | | Late Charge | 0.00 | 0.00 | (540.33) | 0.00 | (7,663.23) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 262.55 | 167,056.43 |
| 07/12/22 | | Arrears | 139.76 | 0.00 | (540.33) | 0.00 | (7,523.47) | 139.76 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | (36.78) | 262.55 | 167,056.43 |
| 07/12/22 | | Due for 06/01/2022 Total Pmnt: $1267.71 P&I: $735.63 Escrow: $532.08 | 0.00 | 0.00 | (540.33) | 0.00 | (7,523.47) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 356.54 | 167,056.43 |
| 07/14/22 | | Arrears | 1,267.71 | 735.63 | (8.25) | 532.08 | (7,523.47) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 356.54 | 166,825.45 |
| 08/12/22 | | Late Charge | 125.32 | 0.00 | (8.25) | 0.00 | (7,398.15) | 125.32 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | (36.78) | 356.54 | 166,825.45 |
| 08/15/22 | | Arrears | 1,267.71 | 735.63 | 523.83 | 532.08 | (7,398.15) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | 0.00 | 356.54 | 166,593.77 |
| 08/15/22 | | Arrears | 523.83 | 0.00 | 523.83 | 532.08 | (7,398.15) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | 0.00 | 356.54 | 166,593.77 |
| 09/10/22 | 30 | Arrears | 1,267.71 | 735.63 | 1,055.91 | 532.08 | (7,334.40) | 63.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | 0.00 | 356.54 | 166,361.39 |
| 09/13/22 | | Arrears | 63.75 | 0.00 | 1,055.91 | 0.00 | (7,334.40) | 63.75 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | 0.00 | 356.54 | 166,361.39 |
| 10/10/22 | 30 | Arrears | 1,267.71 | 735.63 | 1,587.99 | 532.08 | (7,212.62) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | 0.00 | 356.54 | 166,128.31 |
| 10/12/22 | | Arrears | 121.78 | 0.00 | 1,587.99 | 0.00 | (7,212.62) | 121.78 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | 0.00 | 356.54 | 166,128.31 |
| 11/05/22 | 30 | Arrears | 1,267.71 | 735.63 | 2,123.07 | 532.08 | (7,212.62) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 73.56 | 356.54 | 165,894.55 |
| 11/29/22 | | County Tax Disb | 1,341.27 | 0.00 | 2,124.80 | (1,865.27) | (7,212.62) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 356.54 | 165,894.55 |
| 12/05/22 | 30 | Arrears | 1,441.27 | 735.63 | 786.88 | 532.08 | (7,088.44) | 124.18 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 530.10 | 165,660.04 |
| 12/13/22 | | Arrears | 124.18 | 0.00 | 786.88 | 0.00 | (7,088.44) | 124.18 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 530.10 | 165,660.04 |
| 12/31/22 | | Int on Escrow | 8.94 | 0.00 | 795.82 | 8.94 | (7,088.44) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 530.10 | 165,660.04 |
| 01/11/23 | 30 | Arrears | 737.61 | 735.63 | 1,327.90 | 532.08 | (6,831.45) | 256.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 530.10 | 165,424.84 |
| 01/06/23 | | Arrears | 256.99 | 0.00 | 1,327.90 | 0.00 | (6,831.45) | 256.99 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 530.10 | 165,424.84 |
| 02/09/23 | 30 | Arrears | 1,267.71 | 735.63 | 1,859.98 | 532.08 | (6,777.87) | 53.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 165,188.95 |
| 02/14/23 | | Homeowners Insurance | 53.58 | 0.00 | 1,859.98 | 0.00 | (6,777.87) | 53.58 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 165,188.95 |
| 02/24/23 | | Late Charge | 0.00 | 0.00 | 58.83 | (1,801.15) | (6,777.87) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | (36.78) | 0.00 | 165,188.95 |
| 03/14/23 | | Arrears | 0.00 | 0.00 | 58.83 | 0.00 | (6,777.87) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 165,188.95 |
| 03/14/23 | | Arrears | 182.42 | 0.00 | 58.83 | 0.00 | (6,595.45) | 182.42 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 165,188.95 |

| Date rec'd | Days | Date Due/ Description | Total Pd. | Amt. Pd. | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Pmt/ Disb | APO Balance | APO Filed Pmt/ Disb | PPFN Balance | PPFN Filed Pmnt/ Disb | Late Chg Balance | Late Chg Pmt/ Disb | Suspense | Prin. Bal. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/27/23 | 30 | 02/01/23 | 1,267.71 | 735.63 | 590.91 | 532.08 | (6,595.45) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 164,952.31 |
| 03/27/23 | | County Tax Disb | 0.00 | 0.00 | (1,274.34) | (1,865.25) | (6,595.45) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 164,952.31 |
| 03/29/23 | | Payment Received | 1,267.71 | 0.00 | (1,274.34) | 0.00 | (6,595.45) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 1,267.71 | 164,952.31 |
| 03/30/23 | | NSF Payment | (1,267.71) | 0.00 | (1,274.34) | 0.00 | (6,595.45) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 164,952.31 |
| 03/30/23 | | NSF Fee | 0.00 | 0.00 | (1,274.34) | 0.00 | (6,595.45) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (61.78) | (25.00) | 0.00 | 164,952.31 |
| 03/30/23 | 30 | 03/01/23 | 1,292.71 | 735.63 | (742.26) | 532.08 | (6,595.45) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (61.78) | 0.00 | 25.00 | 164,714.98 |
| 04/07/23 | | Arr Escrow Adjustment | 512.02 | 0.00 | (230.24) | 512.02 | (6,595.45) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (61.78) | 0.00 | 25.00 | 164,714.98 |
| 04/11/23 | | Arrears | 117.03 | 0.00 | (230.24) | 0.00 | (6,478.42) | 117.03 | 0.00 | 0.00 | 0.00 | 0.00 | (61.78) | 0.00 | 25.00 | 164,714.98 |
| 04/12/23 | | NSF Fee Payment | 0.00 | 0.00 | (230.24) | 0.00 | (6,478.42) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 25.00 | 0.00 | 164,714.98 |
| 04/21/23 | 30 | 04/01/23 | 1,329.49 | 735.63 | 301.84 | 532.08 | (6,478.42) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 61.78 | 164,476.93 |
| 04/21/23 | | LC Payment | 0.00 | 0.00 | 301.84 | 0.00 | (6,478.42) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 36.78 | 25.00 | 164,476.93 |
| 04/21/23 | | UPB Payment | 0.00 | 25.00 | 301.84 | 0.00 | (6,478.42) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 164,451.93 |
| 05/12/23 | | Late Charge | 0.00 | 0.00 | 301.84 | 0.00 | (6,478.42) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | (36.78) | 0.00 | 164,451.93 |
| 05/15/23 | | Arrears | 118.53 | 0.00 | 301.84 | 0.00 | (6,359.89) | 118.53 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 164,451.93 |
| 05/03/23 | 30 | 05/01/23 | 1,304.49 | 735.63 | 833.92 | 532.08 | (6,359.89) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 36.78 | 164,213.08 |
| 06/02/23 | | LC Payment | 0.00 | 0.00 | 833.92 | 0.00 | (6,359.89) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 36.78 | 36.78 | 164,213.08 |
| 06/13/23 | | Arrears | 97.03 | 0.00 | 833.92 | 0.00 | (6,262.86) | 97.03 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 164,213.08 |
| 06/30/23 | 30 | Due for 06/01/2023 Total Pmnt: $124235 Pckt: $735.63 Escrow: $506.72 — 06/01/23 | 1,242.35 | 735.63 | 1,340.64 | 506.72 | (6,262.86) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 163,973.51 |
| 07/11/23 | | Arrears | 75.34 | 0.00 | 1,340.64 | 0.00 | (6,187.52) | 75.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 163,973.51 |
| 07/12/23 | | Late Charge | 0.00 | 0.00 | 1,340.64 | 0.00 | (6,187.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | (36.78) | 0.00 | 163,973.51 |
| 07/30/23 | 30 | 07/01/23 | 1,242.35 | 735.63 | 1,847.36 | 506.72 | (6,187.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 163,733.22 |
| 08/15/23 | | Arrears | 115.56 | 0.00 | 1,847.36 | 0.00 | (6,071.96) | 115.56 | 0.00 | 0.00 | 0.00 | 0.00 | (36.78) | 0.00 | 0.00 | 163,733.22 |
| 08/15/23 | | Late Charge | 0.00 | 0.00 | 1,847.36 | 0.00 | (6,071.96) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | (36.78) | 0.00 | 163,733.22 |
| 09/12/23 | | Arrears | 63.92 | 0.00 | 1,847.36 | 0.00 | (6,008.04) | 63.92 | 0.00 | 0.00 | 0.00 | 0.00 | (73.56) | 0.00 | 0.00 | 163,733.22 |
| 09/12/23 | | Late Charge | 0.00 | 0.00 | 1,847.36 | 0.00 | (6,008.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (110.34) | (36.78) | 0.00 | 163,733.22 |
| 09/22/23 | 30 | 08/01/23 | 1,242.35 | 735.63 | 2,354.08 | 506.72 | (6,008.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (110.34) | 0.00 | 0.00 | 163,492.20 |
| 10/12/23 | | Late Charge | 0.00 | 0.00 | 2,354.08 | 0.00 | (6,008.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (147.12) | (36.78) | 0.00 | 163,492.20 |
| 10/17/23 | | Arrears | 63.00 | 0.00 | 2,354.08 | 0.00 | (5,945.04) | 63.00 | 0.00 | 0.00 | 0.00 | 0.00 | (147.12) | 0.00 | 0.00 | 163,492.20 |
| 10/30/23 | 30 | 09/01/23 | 1,242.35 | 735.63 | 2,860.80 | 506.72 | (5,945.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (147.12) | 0.00 | 0.00 | 163,250.45 |
| 11/14/23 | | Late Charge | 0.00 | 0.00 | 2,860.80 | 0.00 | (5,945.04) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (183.90) | (36.78) | 0.00 | 163,250.45 |
| 11/14/23 | | Arrears | 114.37 | 0.00 | 2,860.80 | 0.00 | (5,810.67) | 114.37 | 0.00 | 0.00 | 0.00 | 0.00 | (183.90) | 0.00 | 0.00 | 163,250.45 |
| 11/22/23 | | County Tax Disb | 0.00 | 0.00 | 849.37 | (2,011.43) | (5,810.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (183.90) | 0.00 | 0.00 | 163,250.45 |
| 12/12/23 | | Late Charge | 0.00 | 0.00 | 849.37 | 0.00 | (5,810.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (220.68) | (36.78) | 0.00 | 163,250.45 |
| 12/12/23 | | Arrears | 267.11 | 0.00 | 849.37 | 0.00 | (5,563.56) | 267.11 | 0.00 | 0.00 | 0.00 | 0.00 | (220.68) | 0.00 | 0.00 | 163,250.45 |
| 12/18/23 | 30 | 10/01/23 | 1,242.35 | 735.63 | 1,356.09 | 506.72 | (5,563.56) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (220.68) | 0.00 | 0.00 | 163,007.97 |
| 12/29/23 | | Late Charge | 0.00 | 0.00 | 1,356.09 | 0.00 | (5,563.56) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (257.46) | (36.78) | 0.00 | 163,007.97 |
| 12/31/23 | | 11/01/23 | 1,242.35 | 735.63 | 1,862.81 | 506.72 | (5,563.56) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (257.46) | 0.00 | 0.00 | 162,764.76 |
| 01/02/24 | | Int on Escrow | 0.00 | 0.00 | 1,887.49 | 24.68 | (5,563.56) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (257.46) | 0.00 | 0.00 | 162,764.76 |
| 01/02/24 | | Late Charge | 0.00 | 0.00 | 1,887.49 | 0.00 | (5,563.56) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | (36.78) | 0.00 | 162,764.76 |
| 01/15/24 | | Arrears | 112.79 | 0.00 | 1,887.49 | 0.00 | (5,450.77) | 112.79 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | 0.00 | 162,764.76 |
| 01/30/24 | 30 | 12/01/23 | 1,242.35 | 735.63 | 2,394.21 | 506.72 | (5,450.77) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,520.82 |
| 02/13/24 | | Late Charge | 0.00 | 0.00 | 2,394.21 | 0.00 | (5,450.77) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (331.02) | (36.78) | (0.00) | 162,520.82 |
| 02/26/24 | | Homeowners Insurance | 0.00 | 0.00 | 801.06 | (1,593.15) | (5,450.77) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (331.02) | 0.00 | (0.00) | 162,520.82 |
| 02/29/24 | 30 | 01/01/24 | 1,242.35 | 735.63 | 1,307.78 | 506.72 | (5,450.77) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (331.02) | 0.00 | (0.00) | 162,276.14 |
| 03/12/24 | | Late Charge | 0.00 | 0.00 | 1,307.78 | 0.00 | (5,450.77) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (367.80) | (36.78) | (0.00) | 162,276.14 |
| 03/12/24 | | Arrears | 118.79 | 0.00 | 1,307.78 | 0.00 | (5,336.98) | 113.79 | 0.00 | 0.00 | 0.00 | 0.00 | (367.80) | 0.00 | (0.00) | 162,276.14 |
| 03/18/24 | | County Tax Disb | 0.00 | 0.00 | (703.62) | (2,011.40) | (5,336.98) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (367.80) | 0.00 | (0.00) | 162,276.14 |
| 03/31/24 | 30 | 02/01/24 | 1,242.35 | 735.63 | (196.90) | 506.72 | (5,336.98) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (367.80) | 0.00 | (0.00) | 162,030.72 |

| Date rec'd | Days | Date Due/ Description | Total Pd. | Amt. Pd. | Escrow Bal | Escrow Disb/Pmt | Arrearage Balance | Arrearage Pmt/Disb | APO Balance | APO Filed Pmt/Disb | PPFN Balance | PPFN Filed Pmmt/Disb | Late Chg Balance | Late Chg Pmt/Disb | Suspense | Prin. Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/12/24 | | Late Charge | 0.00 | 0.00 | (196.90) | 0.00 | (5336.98) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | (36.78) | (0.00) | 162,030.72 |
| 04/16/24 | | Arrears | 166.31 | 0.00 | (196.90) | 0.00 | (5170.67) | 166.31 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | Due for 03/01/2024 | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |
| | | | 0.00 | 0.00 | (196.90) | 0.00 | (5170.67) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (294.24) | 0.00 | (0.00) | 162,030.72 |